Jan BERGEN, Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY d/b/under the service mark CNA Defendant.

No. Civ. 3:04–CV–0428–H.

United States District Court, N.D. Texas, Dallas Division.

Feb. 7, 2005.

---

Douglas K. Magary, Magary & Associates, Dallas, TX, for Plaintiff.

John F. McCarthy, Jr., Littler Mendelson, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court are Defendant's Rule 56 Motion for Summary Judgment, filed November 15, 2004; Plaintiff's Response, filed December 13, 2004; Defendant's Reply, filed January 7, 2005; Plaintiff's Motion for Leave to File Sur–Response to Defendant's Reply, filed January 31, 2005; and Plaintiff's Second Motion to File Supplemental Response, filed February 3, 2005. Also before the Court are Plaintiff's Motion to Withdraw or Amend Deemed Admissions, filed December 13, 2004; Defendant's Response, filed December 28, 2004; and Plaintiff's Reply, filed January 5, 2005. For the reasons stated below, Defendant's Motion is GRANTED.

## I. Background

Plaintiff Jan Bergen's suit arises out the termination of her employment from Defendant Continental Casualty Company. The factual background that follows is undisputed. Plaintiff was employed by Defendant for over 25 years as an underwriting executive in the Dallas office. (Pl.'s Compl. at 2; Def.'s Am. Answer at 3.) In 1998, Plaintiff's position was eliminated and she began changing positions within the company. (Pl.'s Compl. at 3; Def.'s Am. Answer at 3.) Plaintiff moved to the claims department in February 1998, (Def.'s App. at 43,) before taking a position as a commercial underwriter in February 1999. (Pl.'s Compl. at 3; Def.'s Am. Answer at 3.) Plaintiff remained a commercial underwriter until her termination.

In February 1999, concerned over being "repeatedly called into meetings and advised that [she] was not performing" as expected, Plaintiff wrote a letter to Human Resources Manager Mark Helton. (Def.'s App. at 43.) The February letter gave Plaintiff's account of "a few issues that may be placed in [her] personnel record." (Id.) By March 29, 2000, whatever performance problems Plaintiff questioned appear to have subsided as indicated by her Performance Assessment covering the period from April 1999 to April 2000. (Id. at 50–54.) Similar to her Performance Assessment rating for April 1999–2000, Plaintiff's Performance Assessment rating for April 2000–2001 indicate that her performance "meets the expected level for the position." (Id. at 50–54.) For the period of April 2001–2002, however, Plaintiff's Performance Assessment rating did "not meet the expected level for the position." (Id. at 70–72; Pl.'s Compl. at 3; Def.'s Am.

Answer at 4.) In disagreement with her rating, Plaintiff's wrote to Doug Loinette ("Loinette"), Branch Underwriting Manager, challenging the rating. (Def.'s App. at 70–72; Pl.'s Compl. at 3; Def.'s Am. Answer at 4.) Subsequently, Plaintiff's April 2001–2002 rating was changed to reflect that she "meets the expected level for the position." (Pl.'s Compl. at 3; Def.'s Am. Answer at 4.) Loinette was Plaintiff's supervisor while she worked in the underwriting department. (Pl.'s Compl. at 2–3; Def.'s Am. Answer at 3.)

In October 2002, Defendant conducted a file audit of all Dallas Branch underwriters including Plaintiff. (Pl.'s Compl. at 4; Def.'s Am. Answer at 4.) Three of Plaintiff's four files selected for audit were rated unacceptable. (Pl.'s Compl. at 4; Def.'s Am. Answer at 4.) Seeking improvement, Plaintiff approached and met with Loinette in November 2002. (Pl.'s Compl. at 4; Def.'s Am. Answer at 5.)

On March 25, 2003, Defendant assessed Plaintiff's performance for the period beginning April 2002 and ending April–2003. (Pl.'s Compl. at 5; Def.'s Am. Answer at 6.) Plaintiff's performance was assessed as "not meet[ing] the expected level for the position" or below expectations. (Pl.'s Compl. at 5; Def.'s Am. Answer at 6.) In accordance with Defendant's Performance Improvement Policy ("Policy") (Def.'s App. at 46), Plaintiff was then given notice that she had 30 days to meet expectations. (Pl.'s Compl. at 5; Def.'s Am. Answer at 6; Def.'s App. at 91–93.) At the end of the 30–day period on April 24, 2003, Plaintiff, Loinette, and Branch Vice President Jim Harms ("Harms") discussed Plaintiff's performance. (Pl.'s Compl. at 6; Def.'s Am. Answer at 6–7; Def.'s App. at 91–93.) Plaintiff again failed to meet expectations (Def.'s App. at 102) and was placed on probation. (Pl.'s Compl. at 6.) At the April 24 meeting, Plaintiff was given notice that if she did not reach her goal or meet

expectations her employment would be terminated in 30 days. (*Id.* at 6; Def.'s Am. Answer at 7.)

The following facts are also undisputed. On January 9, 2003, Defendant announced, via newsletter, a recruiting program targeted at recent college graduates. (Pl.'s Compl. at 6; Def.'s Am. Answer at 6; Def.'s App. at 84–86.) Later in the year, the program was announced orally at a biweekly underwriting staff meeting. (Pl.'s Compl. at 6; Def.'s Am. Answer at 6.)

On January 23, 2003, Plaintiff tripped on Harms' desk, fell backward and broke her arm. (Pl.'s Compl. at 4; Def.'s Am. Answer at 5; Def.'s App. at 29, 33.) Plaintiff did not require surgery and returned to work "immediately." (Def.'s App. at 33.) Subsequently, a worker's compensation claim was filed as a result of the on-the-job injury. (Pl.'s Compl. at 4; Def.'s Am. Answer at 5.) Plaintiff remained in a cast until approximately mid-March 2003, and continued to work thereafter. (Def.'s App. at 30, 34.)

On April 7, 2003, Plaintiff attended a biweekly underwriting staff meeting. (Pl.'s Compl. at 6; Def.'s Am. Answer at 6.) In the meeting, one of or both Harms and Human Resources manager Mark Foster ("Foster") remarked that Defendant was seeking "new blood and will be looking at hiring new trainees from college." (Pl.'s Compl. at 6; Def.'s Am. Answer at 6.) On April 21, 2003, Defendant announced the hiring of two trainees in the Dallas office. (Pl.'s Compl. at 6; Def.'s Am. Answer at 6.)

Defendant terminated Plaintiff's employment on May 28, 2003. (Pl.'s Compl. at 6; Def.'s Am. Answer at 7.) On November 19, 2003, charging Defendant with discrimination based on sex, age, disability and retaliation, Plaintiff filed her claims with the Equal Employment Opportunity Commis-

sion ("EEOC") and the Texas Commission on Human Rights. (Def.'s App. at 103.)

The facts chronicled above form the basis of Plaintiff's claims. Plaintiff's causes of action allege: (1) age discrimination in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA") (West 2005) (Pl.'s Compl. at 7–8); (2) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") (West 2005) (Pl.'s Compl. at 7–8); (3) discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA") (West 2005) (Pl.'s Compl. at 6–7); and retaliatory discharge in violation of the Texas Workers' Compensation Act, TEX. LAB.CODE ANN. § 451.001 ("TWCA") (West 2005). (Pl.'s Compl. at 8–10.) In her Response, Plaintiff's argues her ADA claim as a retaliation claim.[1] (Pl.'s Resp. at 23.) Liberally construing Plaintiff's pleadings, the Court will analyze Plaintiff's ADA claim as both a discrimination claim and a retaliation claim.

## II. Standard of Review

### A. Summary Judgment Standard

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. FED. R. CIV. P. 56; *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Innovative Database Sys. v. Morales,* 990 F.2d 217 (5th Cir.1993). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Prop., Inc. v. Potomac Ins. Co. of Ill.,* 140 F.3d 622, 625 (5th Cir.1998) (citing *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548).

The moving party may meet its initial burden by "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). If the movant meets its burden, the nonmovant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Edwards v. Your Credit, Inc.,* 148 F.3d 427, 431 (5th Cir.1998). A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings unsupported by specific facts presented in affidavits opposing the motion for sum-

---

1. Plaintiff's Reponse references, in passing, a Title VII retaliation claim made in her EEOC charge and attempts to assert an ADEA retaliation claim (Pl.'s Resp. at 22–23). In light of the Pretrail Order, entered February 2, 2005, the Court finds that Plaintiff has abandoned any Title VII retaliation claim. The Court's analysis of Plaintiff's ADA retaliation claim applies to Plaintiff's ADEA retaliation claims with equal force. *Holtzclaw v. DSC Communications Corp.,* 255 F.3d 254, 259 (5th Cir. 2001) (ADEA retaliation), *Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir.1999) (ADA retaliation); *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1121–22, 1122 n. 8 (5th Cir.1998) (ADEA and ADA retaliation). Therefore the Court will not, except in notes, refer to Plaintiff's ADEA retaliation claim.

mary judgment. *See* FED.R.CIV.P. 56(e); *Lujan,* 497 U.S. at 888, 110 S.Ct. 3177; *Hightower v. Texas Hosp. Ass'n,* 65 F.3d 443, 447 (5th Cir.1995).

In determining whether genuine issues of material fact exist, "[f]actual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch,* 140 F.3d at 625; *see also Eastman Kodak v. Image Technical Servs.,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). However, in the absence of any proof, the Court will not assume or sift through the record to find that the nonmoving party could or would prove the necessary facts. *See Lynch,* 140 F.3d at 625; *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir.2003). A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir.1991).

### B. The *McDonnell Douglas* Framework

As a preliminary matter, the Court lays out the framework for its analysis of discrimination claims based on circumstantial evidence. "[T]he order and allocation of proof in a private, non-class action challenging employment discrimination" consists of alternating burdens between the plaintiff and the defendant. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 219 (5th Cir.2001), *cert. denied,* 535 U.S. 1078, 122 S.Ct. 1961, 152 L.Ed.2d 1022 (2002). The *McDonnell Douglas* burden-shifting approach dictates that the initial burden of presenting a *prima facie* case falls on the plaintiff (*McDonnell*

*Douglas,* 411 U.S. at 802, 93 S.Ct. 1817); if the plaintiff meets her initial burden, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its allegedly discriminatory action (*id.*); if the defendant articulates a legitimate, nondiscriminatory reason, the burden shifts back, *i.e.* the presumption of discrimination "drops out," and the plaintiff must rebut the defendant's articulated reason. *Id.* at 804, 93 S.Ct. 1817; *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The *McDonnell Douglas* framework applies to causes of action asserted under the ADEA, 29 U.S.C. § 623(a) and the ADA, 42 U.S.C. § 12102(2)(A). *Machinchick v. PB Power, Inc.,* 398 F.3d 345 (5th Cir. 2005) (ADEA employment discrimination claim); *Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 309 (5th Cir.2004) (same); *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 511 (5th Cir.2003) (ADA employment discrimination claim), *cert. denied,* 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003).

### C. The Modified *McDonnell Douglas* Approach

In light of *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), the Fifth Circuit combined the *McDonnell Douglas* approach with that of *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), to evaluate the quantum of proof necessary in ADEA claims. *Rachid,* 376 F.3d at 312. Under the modified *McDonnell Douglas* approach, only the final stage, the "third burden," of the *McDonnell Douglas* approach is modified, leaving unchanged a plaintiff's initial *"prima facie"* burden and a defendant's burden to articulate a legitimate, non-discrimi-

natory reason. *Id.* The modification frames the third burden in the disjunctive: if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); *or* (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motives alternative).

*Id.; Machinchick,* at 351–52. Therefore, a plaintiff can rebut a defendant's articulated reason by producing evidence that creates a genuine issue of material fact on the issue of whether a defendant's articulated reason is a pretext or that the plaintiff's protected characteristic was a motivating factor. *Machinchick,* at 351–52 ("Under this integrated approach, a plaintiff relying on circumstantial evidence has two options for surviving summary judgment in an ADEA case: [pretext alternative or the mixed-motives alternative]."). The Court agrees with, and adopts, its sister courts' rationale in applying the modified *McDonnell Douglas* approach to ADEA and retaliation claims.[2] *See Good v. Ask Jeeves, Inc.,* No. Civ. A. 3:02–CV–1946–L, 2004 WL 2203248, *5 (N.D.Tex. Sep 30, 2004) (ADEA); *Boyce v. Bank of Am. Tech. and Operations, Inc.,* No. Civ. A. 3:03–CV–0770–B, 2004 WL 2545015, at *4 (N.D.Tex.

Nov 10, 2004) (Title VII retaliation); *Reed v. Efficient Networks, Inc.,* No. 3:02–CV–1255–P, 2004 WL 1717369, at *5 (N.D.Tex. Jul 30, 2004) (same). Accordingly, the Court applies the modified *McDonnell Douglas* approach to Plaintiff's claims.

## III. Analysis

### A. Age Discrimination Claim

The ADEA, as amended, makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a) (West 2005). The parties do not argue whether Plaintiff can or has established her *prima facie* case.[3] The Court therefore assumes *arguendo* that Plaintiff has presented a *prima facie* case. Accordingly, the Court begins its analysis with Defendant's proffered reason for Plaintiff's termination.

Defendant cites Plaintiff's poor performance as its legitimate, non-discriminatory reason for terminating Plaintiff. Defendant's uncontroverted evidence includes: Plaintiff's letter to Helton, Human Resources Manager, dated February 1999, indicating Plaintiff's performance (Def.'s App. at 43–45); Plaintiff's performance assessment forms, which indicate evaluations and which documents her performance from April 1, 1999, through April 1, 2002 (*id.* at 50–69, 87–90); Defendant's Policy in place at the time of, and applied in connec-

---

**2.** Other district courts in this Circuit that have taken the lead in applying the so-called "modified *McDonnell Douglas*" to Title VII and retaliation cases include Mississippi and Louisiana. *Warren v. Terex Corp.,* 328 F.Supp.2d 641, 647 (N.D.Miss.2004) (Title VII race and retaliation claims); *Oby v. Baton Rouge Marriott,* 329 F.Supp.2d 772, 786 (M.D.La.2004) (Family Medical Leave Act retaliation claim).

**3.** To overcome summary judgment, Plaintiff is first required to establish a *prima facie* case of

discrimination by showing that she was (1) a member of a protected class; (2) qualified for the position held at the time of discharge; (3) actually discharged or subject to adverse employment action; and (4) either (a) replaced by someone outside the protected class, *i.e.,* someone younger, (b) otherwise discharged as a result of plaintiff's age, or (c) "treated less favorably than similarly situated younger employees." *Smith v. City of Jackson, Miss.,* 351 F.3d 183, 196 (5th Cir.2003); *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 223–24 (5th Cir.2000).

tion with, Plaintiff's termination (*id.* at 3 ¶ 11, 10 ¶ 19, 46–47); and Performance Deficiency and Probationary Review Memoranda preceding Plaintiff's termination, which indicate Plaintiff's deficient status in relation to her Performance Improvement Plan (*id.* at 91–97). Because Defendant has articulated a legitimate, non-discriminatory reason for its decision to terminate Plaintiff, "the presumption of discrimination created by the plaintiff's *prima facie* case disappears." *Machinchick*, at 350–51. Once her *prima facie* case disappears, Plaintiff "must meet [her] ultimate burden … on the issue of intentional discrimination" through either the pretext alternative or the mixed-motives alternative. *Id.* at 351–52; *Rachid*, 376 F.3d at 312.

Plaintiff avers generally that Defendant's proffered reason is pretext. (Pl.'s Resp. at 16.) In the alternative, Plaintiff asserts that "Defendant's reason, while true, is only one of the reasons for it's conduct, and another 'motivating factor' is … Plaintiff's protected characteristic [*i.e.*, age]." (*Id.*) Plaintiff offers the same circumstantial evidence in support of both alternatives. (*Id.* at 16–18). The Court now evaluates Plaintiff's summary judgment evidence to determine whether such evidence creates a genuine issue of material fact as to pretext or "mixed-motives." [4]

Plaintiff's evidence of age discrimination consists of the declarations of Plaintiff and Brenda Pelitere.[5] The declarations con-

tain statements allegedly made by Defendant's executives as heard by Plaintiff or Pelitere. Specifically Pelitere's declaration recounts that "[i]n the first quarter of 2003 [at a mandatory staff meeting in the Dallas office], the new CEO of CNA, Steve Lillienthal [stated], in response to a question of what loyal long-term employees could expect regarding promotion opportunities in the new Regional Office, … that he did not see long-term employees going very far, that they are 'stale and inbred.'" (the "Lillienthal statement") (Pelitere's Decl. at 1.) Plaintiff's declaration recounts that on April 7, 2003, "[i]n a meeting with the underwriting and loss control staff, manager Mark Foster stated that the CNA 'wanted new blood and will be looking at hiring new trainees from college.' Branch Vice President Harms repeated the same sentiments about CNA wanting 'new blood.'" ("Foster–Harms statement") (Pl.'s Decl. at 5.) The remainder of the two declarations contains generalized testimony regarding the subjective beliefs of Pelitere and Plaintiff "that CNA was beginning a campaign to eliminate more expensive, older employees with seniority" (*id.*) and that "senior employees with long-term service were under more scrutiny." (Pelitere's Decl. at 2.)

## 1. Pretext

To survive summary judgment on her pretext claim, Plaintiff's evidence must

---

4. Defendant points to its January 9, 2003, Trainee Program announcement (Def.'s App. at 85–86), as possible evidence of age discrimination. (Def.'s Br. at 17.) However, as Plaintiff herself does not offer the announcement and as the Court finds nothing in the announcement probative of age animus, the Court will not address it further. *See Malacara*, 353 F.3d at 405 ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

5. Plaintiff also offers the declarations of Maggi Porter and Bonnie Stanford. (*See* Pl.'s App. Ex. Tab 4, 5.) The Porter and Stanford declarations do not offer any different information on the question of to Defendant's alleged pretext or mixed-motive. (*See* Porter's Decl.; Stanford's Decl.) The Porter and Stanford declarations support some allegations and reiterate the subjective beliefs contained in Pelitere's and Plaintiff's respective declarations. (*See* Porter's Decl.; Stanford's Decl.) Although only cited in the Court's analysis above, the Court gives full consideration to all the declarations offered.

raise a genuine issue of material fact as to (1) whether Defendant's articulated reason is false, and (2) whether age discrimination was Defendant's real reason for her termination. *See St. Mary's Honor. Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (cited with approval in *Reeves,* 530 U.S. at 143, 148, 154, 120 S.Ct. 2097). Plaintiff points the Court to nothing that impugns Defendant's evidence of a legitimate, non-discriminatory reason.[6] Even by combining the subjective beliefs of Plaintiff and Pelitere about Defendant's treatment of senior employees with the Lillienthal and Foster–Harms statements, Plaintiff's evidence does not raise a genuine issue of material fact whether Defendant's articulated reason is false. *Rober-*

son v. Alltel Info. Servs.,* 373 F.3d 647, 654 (5th Cir.2004) ("appellant['s] subjective belief that [he] was not selected for the ... position based upon race or age is ... insufficient to create an inference of the defendants' discriminatory intent."); *Little v. Republic Ref. Co., Ltd.,* 924 F.2d 93, 96 (5th Cir.1991) ("It should not matter that the [subjective] belief belongs to a party other than the plaintiff"). Given Plaintiff's failure to raise a fact question as to the falsity of Defendant's articulated reason, it becomes immaterial whether Plaintiff's evidence raises a genuine issue whether age discrimination was Defendant's real reason. *See Hicks,* 509 U.S. at 515, 113 S.Ct. 2742.

### 2. Mixed-motives

■ Plaintiff's mixed-motives argument accepts that Defendant's proffered reason is true, but argues that her age played a

---

**6.** Plaintiff relies on *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503 (5th Cir.1988), for the proposition that the Lillienthal and Foster–Harms statements in "combination with the [alleged] discriminatory treatment of Plaintiff are sufficient to send this case to trial on the issue of age discrimination." (Pl.'s Resp. at 18.) At the *prima facie* stage, the "combination" Plaintiff relies on suffices to give rise to an inference of age discrimination, *i.e.,* that Plaintiff's was otherwise discharged as a result of her age. *See Machinchick,* at 351–52. However, the "combination" is insufficient to make a showing of pretext because it must be buttressed with "sufficient evidence to reject the defendant's explanation" or "proof that 'the employer's proffered reason is unpersuasive'[.]" *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see id.* at 143, 120 S.Ct. 2097 ("[A]lthough the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider [along with other substantive evidence,] the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual[.]' ").

*Bienkowski* is inapposite because the plaintiff there had indirect *and direct* evidence raising a genuine issue of whether Defendant's articulated reason was false. Bienkowski's evidence consisted of indirect ageist comments and more importantly, specific evidence directly challenging the veracity of his employer's affidavit evidence. *See Bienkowski,* 851 F.2d at 1507 ("Bienkowski ... responded with his own affidavit, deposition excerpts from a former supervisor and fellow employee, and the EEOC file. He offered [actual] evidence both of 'direct' and 'indirect' discrimination[.]"). The parties' competing evidence in *Bienkowski* was sharply contested, differing "diametrically and very specifically" regarding "the operative facts of Bienkowski's performance." *Id.* Plaintiff's evidence in the instant case doesn't come close to Bienkowski's evidence which itself was "barely sufficient to create a jury issue of intentional age discrimination." *Id.* The operative facts of Plaintiff's performance are not sharply or even strongly disputed; thus there is no question as to the veracity of Defendant's articulated reason. Plaintiff offers only circumstantial or indirect evidence and therefore *Bienkowski* provides no support.

part in Defendant's decision to terminate her. (Pl.'s Resp. at 15–16.) To make out a mixed-motives case, a plaintiff must establish that unlawful age discrimination was a motivating factor in the adverse employment decision. *Roberson*, 373 F.3d at 652–53. The evidence Plaintiff offers in support of her mixed-motives argument is the same evidence offered in her pretext argument.[7] Plaintiff's evidence must be "sufficient for a jury to conclude, by a preponderance of the evidence, that [a prohibited characteristic] was a motivating factor for [the adverse] employment practice." *Desert Palace*, 539 U.S. at 101, 123 S.Ct. 2148.

■ Whether the Lillienthal and Foster–Harms statements are probative of age animus sufficient to survive summary judgment depends on the content, speaker, and context of the statements, *i.e.*, the stray remarks doctrine.[8] *Wallace*, 271 F.3d at 222. Under the stray remarks doctrine, a comment provides sufficient evidence of discrimination if it is "(1) age related, (2) proximate in time to the termination, (3) made by an individual with authority over the termination, and (4) related to the employment decision." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576

(5th Cir.2003) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir.1996)). The Court therefore must analyze the probative value of both the Lillienthal and Foster–Harms statements.

■ The Court finds the Lillienthal statement inadequate summary judgment evidence to prove age discrimination even under the less stringent standard of *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir.2000).[9] Plaintiff does not proffer any evidence showing that Lillienthal made or contributed to the decision to terminate her. The context of Lillienthal's statement also fails to demonstrate that age was a motivating factor in Plaintiff's termination. The statement was heard at a staff-wide meeting some five months prior to Plaintiff's termination in response to a question about promotions. (*See* Pelitere's Decl. at 1.) There is no indication that the statement was made toward, about, or in the context of the decision to terminate Plaintiff, or that Lillienthal participated or influenced that decision. Plaintiff's evidence fails to connect her termination decision to Lillienthal's authority (if any) over her termination. *Wallace*, 271 F.3d at 223–24.

---

**7.** Plaintiff also offers, in support of her mixed-motives argument, the declarations of Plaintiff and Pelitere containing their subjective beliefs about Defendant's alleged ageist attitude. In its pretext analysis above, the Court has already considered this evidence as insufficient. *See Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir.1999) (citing *Grimes v. Texas Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139 (5th Cir.1996) (subjective beliefs insufficient to support discrimination claim)). Without weighing the credibility of the subjective beliefs contained in the declarations, the Court analyzes Defendant's motives under the stray remarks doctrine.

**8.** The Court applies the stray remarks doctrine given Plaintiff's reliance on circumstantial evidence. *Cf. Palasota v. Haggar Clothing*

*Co.*, 342 F.3d 569, 577 (5th Cir.2003) ("[S]o long as remarks are not the only [circumstantial] evidence [ ... ], they are probative of discriminatory intent."); *see Auguster v. Vermilion Parish School Bd.*, 249 F.3d 400, 405 (5th Cir.2001) (refusing to consider stray remarks as circumstantial evidence of age discrimination where [plaintiff offered] no substantial evidence [otherwise] ).

**9.** Since *Reeves*, the Fifth Circuit has cautioned against applying the stray remark doctrine too harshly. *Russell*, 235 F.3d at 226, 229; *but see Auguster*, 249 F.3d at 405 (concluding that while the vitality of the stray remarks doctrine was questioned post-*Reeves*, the doctrine remained intact "at least where the plaintiff has failed to produce substantial [circumstantial] evidence").

The context of the Lillienthal statement is also not probative of age animus. Pelitere heard the Lillienthal statement made in response to a question "regarding *promotion* opportunities" of "long-term employees" (Pelitere's Decl. at 1). "[T]hat he did not see long-term employees going very far, that they are 'stale and inbred,'" (*id.*) does not indicate that Plaintiff or older employees would be terminated, only that there would be no advancement or elevation of employees with a long service record. Pelitere's own interpretation of the Lillienthal statement demonstrates the absence of age animus: "the [Defendant] was not looking to promote from within, but was most likely, going to bring in new employees from the outside." (*Id.*)

Whether Lillienthal used the terms "stale and inbred" and whether those terms are ageist does not create a genuine issue of material fact as to whether Defendant intended to terminate Plaintiff because she was over 40 years old. Although Plaintiff need not meet all four of the *Brown* factors, Plaintiff has only provided summary judgment evidence as to proximity in time between the Lillienthal's comment and her termination. *See Russell*, 235 F.3d at 226, 229 (finding sufficient evidence of age discrimination from two of the *Brown* factors), *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.*, 156 F.3d 581, 590 (5th Cir.1998), *reh'g en banc granted and opinion vacated* by 169 F.3d 215, *opinion reinstated* by 182 F.3d 333 (5th Cir.1999) (finding critically important a comment made only around five months before termination bearing directly on the discriminatory issue). Generally, whether a remark is probative of discrimination depends on if the remark is "direct and unambiguous, allowing a reasonable jury to conclude ... that age was an impermissible factor in the decision to terminate the employee." *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir.1996) (stating that if "the older employee shows that he was terminated in favor of younger, clearly less qualified individuals, a genuine, material fact issue exists.") Plaintiff's evidence is insufficient to raise a genuine issue of material fact on the issue of Defendant's motivation.

Under the same analysis applied to the Lillienthal statement, the April 7, 2003, Foster–Harms statement fails to raise a genuine issue of material fact on the issue of Defendant's motives. Standing alone, the Foster–Harms statement's content and meaning would be ambiguous. The context of the statement clears the ambiguity: it was made in a meeting with the underwriting and loss control staff concurrent with Defendant's announcement of Defendant's college trainee recruiting program in January 2003. (Def.'s App. 84–86.) With respect to the speaker, Plaintiff does not provide evidence as to who made the decision to terminate her and whether such unnamed decision-maker participated or influenced that decision. *Wallace*, 271 F.3d at 223–24. Therefore, as with the Lillienthal statement, Plaintiff's evidence is insufficient. Even looking at the two statements together, Plaintiff's evidence does not raise a genuine issue of material fact as to whether Plaintiff's age was a motivating factor in Defendant's decision to terminate her.

Plaintiff has failed to raise a genuine issue of material fact on the issues of whether Defendant's articulated reason is a pretext or that Plaintiff's age was a motivating factor. Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's ADEA claim.

## B. Title VII Sex Discrimination Claim

With respect to her Title VII claims, Plaintiff has abandoned any such claims. "It is a well-settled ruled that a joint pretrial order signed by both parties super-

sedes all pleadings and governs the issues and evidence to be presented at trial." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir.2000). The parties' signed and jointly submitted Pretrail Order, received January 21, 2005, omitted the Title VII claim. The Court has signed the Pretrail Order, entered February 2, 2005. "Once the pretrial order is entered, it controls the scope and course of the trial. If a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint." *Kona Tech.*, 225 F.3d at 604 (citing FED.R.CIV. PROC. 16); *see Beagles and Elliott Enter., LLC v. Fla. Aircraft Exch., Inc.*, 70 Fed. Appx. 185, 187 (5th Cir.2003). Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's sex discrimination claims.

## C. ADA Claims

Plaintiff's ADA claim is properly construed as a retaliation claim because (1) Plaintiff's ADA claim fails as a matter of law and (2) her Response clarifies that her ADA claim is a retaliation claim. (Pl.'s Resp. at 23.) Since Plaintiff's Complaint, however in-artfully pleaded, asserts an ADA discrimination claim, the Court first analyzes Plaintiff's ADA discrimination claim before analyzing Plaintiff's ADA retaliation claim.

### 1. Discrimination Claim

■ Other than in asserting a retaliation claim, Plaintiff's Response wholly fails to respond, address, or even point to any evidence of discharge on the basis of disability. The Court will not sift through the record to remedy such absence of proof. *See Lynch*, 140 F.3d at 625. Plaintiff does not challenge Defendant's argu-

ments that a broken limb is not covered under the ADA (Def.'s Br. at 7) and her impairment does not "substantially limit" a "major life activity." (*Id.*) Plaintiff concedes, in arguing her retaliation claim, that "her condition may not legally constitute a disability under the ADA." [10] (Pl.'s Resp. at 23.)

Even if the record contains evidence of discharge based on alleged disability and assuming Plaintiff has not abandoned her ADA claim, Plaintiff fails to make a *prima face* case. Plaintiff's *prima facie* burden remains the same as in her ADEA claim above, with the protected characteristic being Plaintiff's disability status. To present a *prima facie* case of discrimination, Plaintiff must show, *inter alia*, that at the time of the adverse employment action, she had a disability. 42 U.S.C. § 12112(a); *Gowesky*, 321 F.3d at 511; *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir.2000). Plaintiff's ADA claim fails in light of the Supreme Court's analysis of what constitutes disability under the ADA. *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (holding that an "impairment's impact must ... be permanent or long-term" to qualify as a disability). As explained in *Toyota Motor*, "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198, 122 S.Ct. 681. Plaintiff fails her summary judgment burden of establishing a *prima facie* case of disability discrimination because Plaintiff's own deposition describes Plaintiff's unimpaired major life activities. (Def.'s Br. at

---

10. "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such indi-

vidual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2) (West 2005).

7–8; Def.'s App. at 33–34.) Plaintiff has not presented any evidence to raise a genuine issue of material fact as to whether she was disabled or whether her major life activities were "substantially limited." Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's ADA claim.

### 2. Retaliation Claim(s) [11]

■ To make a *prima facie* case of a retaliation under the ADA, Plaintiff must present evidence showing (1) a causal connection between (2) an adverse employment action and (3) her participation in an activity protected by the applicable statute. *Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir.1999). The causal connection may be shown by direct evidence or reasonable inferences which may be drawn from circumstantial evidence. *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 590 (5th Cir.1995). If Plaintiff satisfies her *prima facie* burden, Defendant must counter with a legitimate, non-discriminatory reason for the adverse employment action. *Seaman,* 179 F.3d at 301. Once Defendant proffers a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to Plaintiff to show that Defendant's articulated reason is merely a pretext for retaliation. *Seaman,* 179 F.3d at 301 ("Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred.").

The Court begins with Plaintiff's *prima facie* case. Without directing the Court to, or specifying what evidence supports her *prima facie* case, Plaintiff asserts that she was "terminated in retaliation for complaining." (Pl.'s Compl. at 23.) Without citation to the record, Plaintiff relies on four assertions to carry her her retaliation claim:

1. Bergen was harassed by Loinetter after she broke her arm on January 23, 2003. He refused to grant her an accommodation and harassed and intimidated her. 2. Defendant refused to grant a bonus in 2003 even though under company procedures, she was eligible for a bonus. 3. HR Manager Foster did nothing after Bergen complained to him on March 6, 2003 about the company's failure to accommodate her disability. 4. Defendant terminated Bergen on May 28, 2003 after her attorney delivered a letter to Defendant on May 8, 2003 complaining of discrimination and harassment against Bergen.

(Pl.'s Compl. at 23.) Plaintiff's first three assertions do not present evidence of a cognizable adverse employment action. Plaintiff's second and third assertions are insufficient from which to draw a reasonable inference as to causation. Plaintiff's fourth assertion presents *prima facie* evidence of unlawful retaliatory discharge. The Court turns to Defendant's proffered reason and Plaintiff's summary judgment evidence of a pretext.

Again, Defendant cites Plaintiff's poor performance as its legitimate, non-discriminatory reason for terminating Plaintiff. Having already considered Defendant's reason for terminating Plaintiff, the Court will not rehash Defendant's evidence. Defendant meets its burden in articulating a

---

11. Dubious of whether Plaintiff has any federal anti-retaliation claim beyond her ADA retaliation claim (*see* note 1 *supra*), the Court nevertheless notes Plaintiff's ADEA retaliation claim. Conjunctive analysis of Plaintiff's federal anti-retaliation claims is proper because retaliation claims, whether asserted under the ADEA, or the ADA, are analyzed under one basic framework. *Compare Holtzclaw,* 255 F.3d at 259 (ADEA retaliation), *with Seaman,* 179 F.3d at 301 (ADA retaliation); *see also Sherrod v. Am. Airlines, Inc.,* 132 F.3d 1112, 1121–22, 1122 n. 8 (5th Cir.1998) (ADEA and ADA retaliation).

legitimate, non-discriminatory reason. *Seaman,* 179 F.3d at 301.

In light of Defendant's proffered reason for terminating Plaintiff, Plaintiff "must adduce sufficient evidence that the proffered reason is a pretext for retaliation." *Seaman,* 179 F.3d at 301. Ultimately Plaintiff must prove that "but for" having complained of discrimination, the discharge would not have occurred when it did. *Id.* The evidentiary standard at the "but for"/pretext stage is more stringent than at the *prima facie* stage.[12] While sufficient in surmounting the less stringent *prima facie* burden, the proximity in time between the May 8, 2003, letter and Plaintiff's termination, without more is insufficient evidence to rebut the truth of Defendant's reason. Plaintiff has not adduced any evidence showing that Defendant's articulated reason is a pretext for the adverse employment action. Plaintiff has offered no competent summary judgment evidence to raise a genuine issue of fact regarding whether Defendant's legitimate, non-discriminatory reason for terminating her was pretextual. Therefore, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's retaliation claims.[13]

### D. Texas Workers' Compensation Retaliation Claim

▇▇▇▇ Plaintiff's Complaint asserts a TWCA retaliation claim. (Pl.'s Compl. at 8.) To make a *prima facie* case for her TWCA retaliation claim, Plaintiff must present evidence showing (A) her participation in an activity protected by the TWCA; (B) an adverse employment action; and (C) a causal connection between the two. *West v. Maintenance Tool & Supply Co.,* 89 S.W.3d 96, 105 (Tex.App.— Corpus Christi 2002, no pet.) ("This causal connection is an element of the employee's *prima facie* case and may be established by direct or circumstantial evidence and by reasonable inferences which may be drawn from such evidence."). The causal connection may be shown by evidence of (1) discriminatory treatment relative to similarly situated employees; (2) the employer's failure to adhere to established policies; (3) knowledge of the complaint by the decisionmakers responsible for terminating Plaintiff; (4) the falsity of the stated reason for the discharge; and (5) an expression of a negative attitude toward the employee's physical condition.[14] *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 451–52. (Tex.1996). If Plaintiff makes her *prima facie* case, Defendant must proffer a legitimate non-discriminatory reason for the adverse employment action. *West,* 89 S.W.3d at 105. To survive summary judgment "after Defendant articulates a legitimate, non-discriminatory reason, Plaintiff must provide summary judgment evidence of a retaliatory motive." *Id.* at 105–06; *Benners v. Blanks Color Imaging, Inc.,* 133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet. h) ("the burden shifts back to the employee to either present evidence [of a retaliatory motive] or

---

12. Federal courts evaluating federal anti-retaliation laws acknowledge the distinction in a plaintiff's standard of proof at the *prima facie* stage as compared to the pretext stage. *See Ackel v. Nat'l Communications, Inc.,* 339 F.3d 376, 385 (5th Cir.2003); *Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir.2001) (Title VII retaliation); *Long v. Eastfield College,* 88 F.3d 300, 305 n. 4 (5th Cir.1996) (same); *Sherrod,* 132 F.3d at 1122 n. 8 (ADEA and ADA retaliation).

13. Summary Judgment in favor of Defendant is also proper as to Plaintiff's ADEA retaliation claim.

14. Plaintiff need not present evidence on every factor. *See Cont'l Coffee,* 937 S.W.2d at 451 (finding causal link based on only two factors). Plaintiff's assertion that in her case all the factors are present is without merit.

challenge the employer's summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason.") At this final stage, Plaintiff "must establish that 'but for' the filing of the claim, the discharge would not have occurred when it did." *West*, 89 S.W.3d at 105; *Cont'l Coffee*, 937 S.W.2d at 450–51 & n. 3.[15]

■ Plaintiff argues extensively that the causal link inference can be made because of, *inter alia*, Defendant's (1) alleged statements of animus toward her injury; (2) alleged failure to adhere to company policies; and (3) termination of Plaintiff 125 days after filing her workers' compensation claim. (Pl.'s Resp. at 18–22.) Because Plaintiff is not required to present evidence on every *Continental Coffee* factors to make the *prima facie* inference, the Court assumes without deciding that a causal connection exists. *See* notes 14, 15 *supra*. The Court next turns to Defendant's proffered reason and Plaintiff's summary judgment evidence of a retaliatory motive.

Defendant's proffered legitimate, nondiscriminatory reason for terminating Plaintiff remains the same: Plaintiff's poor performance. Having already considered it, the Court will not rehash Defendant's evidence. In producing evidence of a legitimate, non-discriminatory reason, Defendant meets its evidentiary burden.

*West*, 89 S.W.3d at 105. Therefore, the burden shifts to Plaintiff "to produce controverting evidence of a retaliatory motive." *Benners*, 133 S.W.3d at 370.

Instead of challenging Defendant's summary judgment evidence, Plaintiff aligns her argument along the *Continental Coffee* factors. (Pl.'s Resp. at 19, 21.) Plaintiff offers her declaration as the only evidence of retaliatory discharge. (*Id.* at 20–21.) Plaintiff offers, however, no evidence as to retaliatory treatment relative to similarly situated employees. In the entire declaration there is not even one mention of any employee having filed a workers' compensation claim, much less being terminated for such. Defendant's uncontroverted evidence shows another employee who filed a workers' compensation claim for carpal-tunnel syndrome and was not terminated. (Def.'s App. at 40.) Plaintiff declares that "Loinette was harassing her, and not disciplining other similarly situated employees." (Pl.'s Decl. at 3.) Plaintiff fails to offer any competent summary judgment evidence identifying a similarly situated employee who was "just as late in processing renewals." (*Id.;* Pl.'s Resp. at 20.) Plaintiff's evidence is nothing more than her subjective belief. *West*, 89 S.W.3d at 105–06 ("Subjective beliefs are no more than mere conclusions and are not competent summary judgment evidence."); *Roberson*, 373 F.3d at 654.

---

15. The Plaintiff's evidentiary burden at the final stage is necessarily heavier than at the *prima facie* stage because otherwise, the burden shifting approach would be redundant (if not futile): the employee establishes a causal link using the *Continental Coffee* factors, the employer presents evidence of a legitimate reason, and the employee *again* establishes "but for" causation using the *Continental Coffee* factors. *See Anderson*, 2001 WL 585760, at *3 n. 2 (citing *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 61 (Tex.App.1993, writ denied), and *Mid–South Bottling Co. v. Cigainero*, 799 S.W.2d 385, 389 (Tex.App.1990, writ denied) to note that Texas law differentiates between the quantum of proof distinction in the context of a § 451.001 cause of action); *Long*, 88 F.3d at 305 n. 4 ("the ultimate determination in an unlawful retaliation case is whether the conduct protected by [the anti-retaliation statute] was a 'but for' cause of the adverse employment decision.... The standard for establishing the 'causal link' element of the plaintiff's *prima facie* case is much less stringent.") (Title VII retaliation); *see also Brizendine v. Texas Dept. of Health*, No. 03–04–00197–CV, 2004 WL 2814319, at *2 (Tex. App.—Austin Dec.09, 2004) (not designated for publication) (in the context of a Tex. Labor Code Ann. § 21.055 retaliation action).

With respect to Defendant's alleged failure to adhere to established policies, Plaintiff declares that on March 6, 2003, "she showed [Foster] the HR Manual provisions where it states that [Defendant] is supposed to assist with disability requests." (Pl.'s Decl. at 4.) In response, "Foster [said] that he had to talk to Loinette and Harms." (Pl.'s Decl. at 4.) Approximately a week later, Plaintiff's impairment abated, *i.e.* the cast was removed. (Def.'s App. at 30, 34.) That Plaintiff "never heard from him [Foster] further," (Pl.'s Decl. at 4), fails to raise a genuine issue of material fact whether Defendant failed to adhere to established policies.

On the issue of whether the decision-makers responsible for Plaintiff's termination had any knowledge of her complaints or workers' compensation claim, Plaintiff fails to identify the decision-makers responsible for her termination. Therefore there is no competent summary judgment evidence of knowledge by the unidentified decision-makers of her workers' compensation claim.

Nothing in Plaintiff's declaration, viewed in the light most favorable to Plaintiff, could lead a rational factfinder to conclude that Defendant's reason was either false or that Defendant terminated Plaintiff in retaliation for her workers' compensation claim. Plaintiff's declaration utterly fails to deny or even comment on her performance. Nothing in Plaintiff's summary judgment evidence raises a genuine issue of fact as to the falsity of Defendant's stated reason for the discharge. *Terry v. Southern Floral Co.*, 927 S.W.2d 254, 257 (Tex.App.—Houston [1 Dist.] 1996).

Plaintiff cannot demonstrate that Defendant expressed a negative attitude toward her condition. Plaintiff's declaration alleges that Loinette made the following statements: in response to Plaintiff's request for advice on what she could do to keep up, Loinette replied "I wish I could [do some-thing], but no one is going to let me give you any help." (Pl.'s Decl. at 3.) While discussing referrals, Loinette asked Plaintiff: "When are you going to get caught up?" (*Id.*) The context and content of the Loinette's latter remark is devoid of any expression of a negative attitude toward Plaintiff's physical condition. Although the former statement indicates a general negative attitude, by itself it is insufficient to raise a genuine issue of material fact of a retaliatory motive in Defendant's decision to terminate Plaintiff. Plaintiff has not produced controverting evidence of a retaliatory motive. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's worker's compensation retaliation claims is GRANTED.

## IV. Conclusion

Plaintiff has waived her Title VII claims as a matter of law. Plaintiff has failed to produce sufficient competent summary judgment evidence on her: ADA disability discrimination and retaliatory discharge claims; ADEA age discrimination claims; and TWCA retaliation claim. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** in its entirety. Plaintiff's Complaint is **DISMISSED** with prejudice. Judgment will be entered in favor of Defendant.

SO ORDERED.