United States Court of Appeals
Fifth Circuit

**F I L E D**

December 13, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 05-20363

MILTON JONES,

                                                                    Plaintiff-Appellant,

versus

OVERNITE TRANSPORTATION COMPANY,

                                                                    Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
(04-CV-2528)

Before GARZA, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Milton Jones appeals the district court's grant of summary judgment to Overnite Transportation Company ("Overnite"). Jones filed suit against Overnite for race discrimination and retaliation under Title VII. The two issues on appeal are (1) whether the district court properly granted summary judgment to Overnite on Jones's claim of race discrimination; and (2) whether the

---

[*]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

district court properly granted summary judgment to Overnite on Jones's claim of retaliation. The district court entered a final judgment that Jones take nothing. We affirm the judgment.

I.

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court. *Machinchick v. P.B. Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). In deciding a motion for summary judgment, the court must determine whether the submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hart v. Hariston*, 343 F.3d 762, 764 (5th Cir. 2003). In deciding whether a fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reeves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

II.

Jones, an African-American male, worked as a dockworker for Overnite. On March 13, 2003, Keith Keller, an Overnite manager, assigned Jones to recoup a shipment of bottled water. This duty involved separating crushed and leaking bottles from undamaged bottles. Overnite's policy manual requires that employees send damaged freight to the Overage, Shortage and Damage bay and remaining freight to a trailer for shipment. While recouping the bottled water, Jones handed one bottle to his coworker, Luis Anaya. A few minutes later, Anaya returned to his work area and put the bottle on his forklift. Jones continued recouping the shipment. Jones contends that he asked Anaya to hold the bottle while he retrieved a knife from his pocket. After retrieving the knife, however, Anaya walked away with the knife and bottle of water because Jones forgot to get it back.

Keller witnessed the entire exchange between Jones and Anaya. In response, Keller sent Cecil Sheffield, a first-line supervisor, to investigate the situation. Sheffield conducted separate interviews with Jones and Anaya about the incident. Sheffield also returned the bottle of water to the shipment. Keller then met with Sheffield, Anaya, and Jones regarding the matter; after the meeting, Keller sent Anaya and Jones home for the day. The next morning, Brett Henson, a dock supervisor and Assistant Service Center Manager, spoke with Jones about the incident and did not believe his explanation. Henson suspended Jones pending further investigation.

Shortly thereafter, on March 21, 2003, Henson terminated Jones for attempted theft and failure to follow work procedures. Jones appealed his termination to the Peer Review Board ("PRB") of Overnite. The PRB reviews termination decisions to ensure compliance with Overnite's policies and legal employment standards. The PRB heard testimony from Jones but upheld his termination. His testimony made no mention of race discrimination.

Jones now contends that, prior to his termination, he overheard Henson make discriminatory statements. Jones alleges that Henson expressed the desire to "get rid of all the blacks" and "fire all the niggers" approximately four months before his termination. Also, an EEOC determination letter alleges that Henson contacted a staffing agency to request white drivers instead of black drivers. On March 1, 2003, Jones attended a meeting of approximately thirty to forty Overnite employees and Steve Smith, Overnite's Regional Vice-President. Jones alleges that the employees and Smith discussed complaints about alleged race discrimination against black and Latino employees ( the "management meeting"). Jones asserts that Henson knew the purpose and attendees of the meeting because afterwards, Jones passed Henson outside the conference room. Henson admits that he was aware of the management meeting but denies any knowledge of what the employees discussed or who

3

attended the meeting. During the following months, six of the black employees in attendance were fired from the company. After Henson fired Jones, however, Overnite hired three black dockworkers out of five employees hired immediately after Jones's termination.

In March 2004, the EEOC issued Jones a "notice of right to sue" letter. On June 29, 2004, Jones timely filed suit against Overnite for race discrimination and retaliation under Title VII in conjunction with state law tort claims for intentional infliction of emotional distress, negligence, and negligent hiring, supervision, training, and retention. The district court dismissed the tort claims and granted Overnite's motion for summary judgment on the Title VII claims. On March 22, 2005, the district court entered a final judgment for Jones to take nothing. We now decide whether Jones presented sufficient evidence to create a genuine issue of material fact regarding the legitimate, nondiscriminatory reason, offered by Overnite, in defense of the race discrimination and retaliation claims. We also carefully consider whether Jones waived any available arguments.

III.

A.

A plaintiff may prove employment discrimination through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Direct evidence proves intentional discrimination without inference or presumption when believed by the trier of fact. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). It "includes any statement or written document showing a discriminatory motive on its face." *Fierros v. Tex. Dep't of Heath*, 274 F.3d 187, 195 (5th Cir. 2001) (citing *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994)). If the plaintiff provides direct evidence, then the burden shifts to the employer to

prove that the same adverse action would have occurred regardless of discriminatory animus. *Laxton*, 333 F.3d at 578.

Absent direct evidence of intentional race discrimination, a plaintiff must establish the following elements of a prima facie case under the *McDonnell Douglas* framework: (1) he is a member of a protected group; (2) he was qualified for his position; (3) he was discharged or suffered some other adverse employment action; and (4) he was replaced with a person outside of the protected class, or he was treated less favorably than similarly situated employees of a different race. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). Once the plaintiff establishes a prima facie case, the burden shifts onto the defendant to assert a nondiscriminatory, legitimate reason for the termination. *Id.* at 802. If the defendant meets his burden, then the inference against the defendant dissolves, and the plaintiff must show that the given reason is a pretext for unlawful discrimination. *Id.* at 804.

B.

Jones allegedly overheard Henson state that he wanted to "get rid of all the blacks" and "fire a bunch of niggers." Henson also allegedly requested a staffing agency to send white drivers instead of black drivers. Both comments and the request reveal a discriminatory motive on their face but lack the indicia of specificity and causation required to be direct evidence of race discrimination. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996). The existence of racial animus scarcely appears in the form of statements that explicitly express an unlawful discriminatory intent. On such rare occasion, however, the plaintiff has brought forth evidence that clearly demonstrates an employer's discriminatory motive for its adverse employment action without any additional inferences or presumptions required by the court.

For example, in *Jones v. Robinson Prop. Group, L.P.*, the court held that the plaintiff's race discrimination claim was supported by direct evidence because two witnesses testified to "decision maker(s) in the poker room us[ing] race as a factor in employment decisions." 427 F.3d 987, 993 (5th Cir. 2005). The decision maker in both instances made comments to the witnesses that "these good old white boys don't want black people touching their cards" and "maybe I've been told not to hire too many blacks in the poker room." *Id.* at 990-91. The court reasoned that these incidents, combined with additional evidence, "cite[] specific statements and, especially in light of the summary judgment standard... prove with sufficient particularity when the statements were made and generally who made them." *Id.* at 993.

The statements offered by Jones to prove intentional race discrimination require the trier of fact to infer a nexus between the evidence and his termination. First, Henson's alleged request to receive white drivers as opposed to black drivers does not relate to Jones's former employment as a dockworker. The next set of comments, regarding the termination of black employees, lack the concrete specificity of acts held by this court to be direct evidence of unlawful discrimination.

Although the relevant law does not provide a brightline rule for determining the requisite time proximity between discriminatory acts and an employee's termination, Jones claims that he overheard Henson make these remarks approximately four months prior to his termination. Outside this isolated incident, Jones mentions no other racial epithets directed toward him or another employee. When "comments are vague and remote in time they are insufficient to establish discrimination. In contrast, specific comments made over a lengthy period of time are sufficient." *Wallace v. Methodist Hos. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655-56 (5th Cir. 1996)).

6

In *Fierros*, this court reviewed an affidavit stating that the decision maker told the aggrieved employee that she did not receive a pay increase because she filed a discrimination complaint against her supervisor. 274 F.3d at 195. The affidavit constituted "direct evidence that Arnold [the decision maker] had a retaliatory motive because it 'is evidence which, if believed, proves the fact of intentional retaliation without inference or presumption.'" *Id.* Henson did not make the alleged discriminatory statements to Jones, but rather to another person while conversing in an adjacent room. Finally, Jones does not show that Henson fired many other African-American employees. To the contrary, Overnite hired additional black dockworkers immediately after Jones's termination. Thus, based on the statements alone, the court must infer how the evidence of discrimination relates to Jones's termination. The need to infer or presume the causal connection means that the statements are not direct evidence of intentional race discrimination.

Without direct evidence, Jones must prove his claim under the *McDonnell Douglas* paradigm. Jones argues in this appeal that in light of the direct evidence, "it is not necessary... to proceed under the *McDonnell Douglas* framework." Overnite analyzes Jones's allegations under *McDonnell Douglas* and argues that Jones fails to establish two elements of a prima facie claim: Overnite replaced him with employees outside his protected class; and he was treated less favorably than similarly situated employees of a different race. We need not decide the issue of whether Jones fulfilled his initial burden under *McDonnell Douglas* because Jones failed to rebut Overnite's purported reason for his termination.

Overnite maintains that Henson fired Jones for three reasons: (1) suspicion of theft/intended theft; (2) failure to follow work procedures; and (3) dishonesty regarding the incident. Overnite's Conversion of Overages Policy (the "Conversion Policy") states in pertinent part that:

7

> All employees are prohibited from converting any freight to personal or internal Company uses....You are prohibited from taking anything from a "live" shipment or out of the OS&D bay area for either personal or internal uses. Any act of Conversion, or any action which results in the appearance of conversion, will not be tolerated and will result in disciplinary action, and where appropriate, termination of employment.

Henson's termination of Jones and Anaya for their involvement with the incident comports with the company's written procedures. *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999) (holding that manager applied an objective standard in the termination of city employee without pretext because supervisor based termination on policy allowing for immediate termination). A peer review board later heard Jones's grievance and upheld his termination. Notably, Jones did not mention any incidents of race discrimination at his review. Given Overnite's zero tolerance policy, applied evenly to Jones and Anaya, the gravamen of the case rests on these facts unless Jones meets his burden on rebuttal. Jones presented no evidence to contradict the legitimate, nondiscriminatory reason asserted by Overnite. He simply failed to show that the same adverse action would not have occurred regardless of discriminatory animus. For these reasons, we affirm the district court's grant of summary judgment.[1]

IV.

A.

A plaintiff may prove a retaliation claim through direct or circumstantial evidence. *Fabela v. Socorro I.S.D.*, 329 F.3d 409, 414 (5th Cir. 2003). In most cases, the employer does not explicitly state a retaliatory purpose for discharging an employee. Without direct evidence, the plaintiff must

---

[1]Jones waived the mixed-motive theory of intentional discrimination in the district court; therefore, application of the mixed-motive analysis falls outside the scope of this appeal. *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002).

establish his cause of action using circumstantial evidence and the *McDonnell Douglas* burden-shifting framework. *Id.* at 415. A plaintiff must show the following three elements: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and adverse employment action. *Fierros*, 274 F.3d at 191. If the plaintiff establishes a prima facie case, then the defendant must show a non-retaliatory, legitimate reason for the adverse action. Once the defendant meets this burden, the plaintiff must in turn offer evidence to create a genuine issue of material fact that the defendant's reason is not true, but is instead a pretext for discrimination. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

B.

Jones contends that Overnite terminated his employment in retaliation for his attendance at the management meeting. At this meeting, the employees allegedly voiced their concerns about racially discriminatory practices in the workplace. Jones fails to identify any complaints of discrimination made at the meeting by either himself or his coworkers. More important, the meeting notes and the corporate representative, Smith, refute any assertion that the meeting concerned race discrimination issues. Even if Jones arguably established a prima facie case of retaliation under the *McDonnell Douglas* framework, he once again failed to rebut the legitimate, non-retaliatory reason offered by Overnite for his termination.

Overnite maintains that Henson fired Jones and Anaya for their involvement in the bottled water incident based upon the Conversion Policy. Overnite's application of an objective standard to terminate Jones greatly reduces the likelihood that Overnite's legitimate reason is a pretext for an unlawful purpose. *Roberson v. Alltel Infor. Servs.*, 373 F.3d 647, 652-53 (5th Cir. 2004) (noting that

9

the objective process for choosing employees to be terminated supported the legitimacy of an employer's nondiscriminatory reason).  In response to Overnite's explanation for his termination, Jones merely argues that Overnite's non-retaliatory, legitimate reason is not true; instead, Henson fired Jones because he did not believe his "honest" account of the bottled water incident.

Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus. *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997).   An employer can make an incorrect employment decision; if based on a good faith belief with no discriminatory influences, then the court will not try the validity of the reason. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).  Accordingly, Overnite fulfilled its burden of producing evidence to show a non-retaliatory, legitimate reason for Jones's termination.  For these reasons, we affirm the grant of summary judgment.[2]

V.

The district court properly granted summary judgment to Overnite on the Title VII claims of race discrimination and retaliation brought by Jones.  For the race discrimination claim, Jones failed to create a genuine issue of fact on whether Overnite terminated him for a nondiscriminatory, legitimate reason. Similarly, Jones failed to present sufficient evidence that the non-retaliatory, legitimate reason offered by Overnite for his termination was a pretext for unlawful retaliation. Based on the above reasons, we AFFIRM the district court's judgment.

---

[2]In the alternative, Jones argues that the mixed-motive theory applies to his claim.  Jones did not present any arguments related to the mixed-motive theory in district court.  A plaintiff must raise his mixed-motive theory in the district court to preserve the argument on appeal. *Carthon v. Johnson Controls, Inc.*, 100 F. App'x 993, 997 (5th Cir. 2004).  Thus, the mixed-motive argument falls outside the scope of our appellate review.