# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 18, 2013

Lyle W. Cayce
Clerk

No. 13-20239
Summary Calendar

ANNIESA L. PARIS,

Plaintiff–Appellant,

versus

SANDERSON FARMS, INCORPORATED;
SANDERSON FARMS, INCORPORATED (FOODS DIVISION),
Individually and Doing Business as Sanderson Farms, Incorporated;
SANDERSON FARMS, INCORPORATED (PRODUCTION DIVISION);
SANDERSON FARMS, INCORPORATED (PROCESSING DIVISION),

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-3119

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.
JERRY E. SMITH, Circuit Judge:[*]

Anniesa Paris, a former employee of Sanderson Farms, Inc. ("Sanderson

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 13-20239

Farms"), appeals a summary judgment dismissing her discrimination and retaliation claims. We affirm.

I.

In 2008, Paris began working at Sanderson Farms' poultry processing plant as a personnel clerk and was shortly thereafter promoted to the position of employee records clerk. Sanderson Farms has its own Family and Medical Leave Act Policy for Salaried Employees ("the Policy") for handling employee leave under the Family and Medical Leave Act ("FMLA"). The Policy permits employees to take up to thirteen weeks' leave annually, rather than the twelve weeks provided by the statute. The Policy imposes certain protocols employees must follow before[1] and during[2] their leave. The Policy also specifies that "an employee[] who fail[s] to return after exhausting their thirteen weeks of FMLA leave will be subject to discharge" unless Sanderson Farms grants an extension.[3]

On October 19, 2009, Paris took FMLA leave to undergo and recover from

---

[1] The Policy requires employees to "provide [Sanderson Farms] with sufficient information to enable it to determine whether the leave requested qualifies as FMLA leave." Sanderson Farms, where appropriate, "will require certification issued by a health care provider of an employee's need for leave because of the employee's own serious health condition . . . ." An employee must submit this certification within fifteen days after receiving the forms from Sanderson Farms "unless [such submission] is impracticable . . . and the employee has made diligent, good faith efforts to comply with this deadline."

[2] The Policy requires employees on leave to "call the Field Employee Relations Manger periodically to report on their status and intent to return to work."

[3] The Policy allows "employees who, because of disability, remain temporarily unable to perform their jobs after exhausting FMLA leave may request extensions of leave beyond the thirteen-week limit." The employee must request the extension reasonably in advance of the expiration of the expiration of the existing leave, and any such extension "must be approved by [Sanderson Farms'] Executive Committee."

No. 13-20239

a surgical procedure; she returned to work on November 16. Paris claims that, during her leave, her supervisor, Richard Warner, harassed her regarding her leave.[4] In December, Sanderson Farms terminated Warner for poor job performance, including for issuing Paris's improper write-ups. Also in December, Sanderson Farms received a demand letter from a former employee, Revena Carroll, alleging claims of discriminatory and retaliatory discharge and claiming that Paris had witnessed an incident related to Carroll's claims against Sanderson Farms.[5]

Paris began a second FMLA leave on December 17 after receiving treatment at the emergency room. Her treating physician, Gerald Salinas, submitted a completed FMLA certification on December 30 saying that Paris would be out of work for "two to three weeks" to give Salinas a chance to determine the cause of her symptoms.

On January 8, 2010, Orman called Paris to see whether she planned to return to work or would need additional leave. Because Paris did not know when she would return, Ormon told her that she would need to submit an updated FMLA certification to cover any additional leave. On January 22, Paris submitted an FMLA certification signed by Salinas, indicating a return date of January 25.

---

[4] Paris claims Warner told her she was not following the Policy, which required her to submit a timely doctor's note to excuse an absence. When Paris returned to work, Warner issued her two write-ups for excessive lateness and the unauthorized release of information from personnel files. Paris complained to the Division Manager, Todd Ormon, requesting those "bogus" write-ups be removed from her files. Ormon determined that the write-ups were unjustified and removed them.

[5] Carroll's letter alleges the following altercation: "When Anniesa Paris handed [documentation indicating Carroll required extending her FMLA leave] to Mr. Ormon, he looked at it, then threw it back at her angrily, and said, 'I don't need this, I'll take care of it myself.'"

3

No. 13-20239

Paris did not return to work on January 25 but instead submitted a note from Salinas indicating that Paris needed to remain out of work "until she's released by the Gastroenterologist." That same day, Veronica Campbell, who was Warner's replacement, sent a certified letter to Paris that indicated (1) Paris needed to send a new certification to cover any leave beyond January 25, and (2) Salinas's note was insufficient documentation. Two days later, Salinas submitted an updated FMLA certification stating that Paris could not return to work until after she saw a gastroenterologist on March 18.

Paris's FMLA leave expired in February.[6] On February 22, Salinas submitted a note stating that Paris "is still waiting to see GI [on] 3/18/10 and is still off work." On February 26, Ormon requested Paris's leave be extended to March 18. Sanderson Farm's Executive Committee approved the extension.

Paris saw her gastroenterologist, Anupama Duddempudi, on March 18, then called Campbell to say she would be unable to return to work at that time. On March 23, Salinas sent Sanderson Farms a note stating Paris was "excused from work until Gastroenterologist, Dr. Duddempudi, gives any indication that she can return." In response, on March 25, Campbell sent Paris a certified letter indicating (1) her extension had expired on March 18, and (2) her employment would be terminated unless she returned to work or request another extension by April 9.[7]

---

[6] Based on Sanderson Farms' calculations, which Paris does not dispute, Paris's leave under the Policy expired on or about February 18, and Paris's twelve-week statutory leave expired on or about February 11.

[7] The cover letter indicates April 10 as the due date, whereas the attached certification required Paris to return the certification by April 9. In its brief, Sanderson Farms contends "April 9, 2010 was the correct date, because April 10 was a Saturday."

4

No. 13-20239

In the afternoon of Friday April 9, Salinas faxed Campbell a medical certification form indicating that Paris's expected date to return to work was "today, 4/09/10."[8] Shortly after receiving that certification, Campbell forwarded it to Jennifer Buster, a Sanderson Farms Human Resources Manager.

Paris did not return to work on April 9. Having not heard from her, Buster decided that before taking any further action, Sanderson Farms should wait to see whether she came to work on Monday April 12. Paris claims she left messages for Campbell on April 2 to inform Campbell that she had a procedure scheduled for April 5, and on April 8 to inform Campbell that her paperwork would be delayed because her doctor was out of the country. Sanderson Farms disputes that Paris left those messages.[9]

Paris did not come to work on April 12. The next day, Buster spoke with Ormon and Campbell concerning Paris's employment status; after that conversation, Buster[10] terminated Paris's employment. The parties disagree on the effec

---

[8] Paris points to several "odd" features of the fax: (1) In spite of the January 25 letter indicating Paris would remain out of work "until she's released *by the Gastroenterologist*," the certification came from Salinas, not Duddempudi; (2) the certification came on April 9 instead of April 15, when Duddempudi was supposed to return to her office; (3) the document was faxed at 3:15 p.m. on a Friday, "indicating Paris was released to work then, the same day she was supposed to return to work;" (4) the document was not personally presented by Paris; and (5) Campbell admitted the release had some odd features.

[9] Sanderson Farms points to undisputed testimony indicating that the only means to send Campbell a message would by leaving a message with the receptionist. That is, phones in the processing plant do not have voice mailboxes. Per her deposition testimony, Campbell "does not remember" whether she received a call from Paris before April 5 or on April 8.

[10] At his deposition, Ormon testified that although he was involved in the decision to terminate Paris, the ultimate decision was made by Buster. Paris's counsel asked Buster during her deposition whose decision it was to terminate: "yours or [Orman's] or somebody's else?" Buster responded that the "policy dictated" termination; Campbell testified that she was involved only in handling the paperwork regarding Paris's termination. In its interrogatory

(continued...)

5

tive date of termination:  Sanderson Farms claims it was April 9,[11] but Paris claims it was April 1.[12]

Paris sued, alleging that Sanderson Farms interfered with her rights under the FMLA and discriminated and retaliated against her by terminating her in violation of the FMLA, the Americans with Disabilities Act ("ADA"), and the Texas Commission on Human Rights Act ("TCHRA").  The district court granted summary judgment on all claims.

## II.

We review a summary judgment *de novo*, "using the same standard as that employed by the district court under Rule 56." *Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[10] (...continued)
responses, Sanderson Farms stated that Buster and Campbell were both involved in the decision.

[11] Sanderson Farms relies on three pieces of evidence for this date: (1) A Sanderson Farms "Salaried Payroll Authorization" form signed by Ormon and Campbell on April 13 indicates that the effective date of termination was April 9; (2) Paris was told to file her second extension by April 9; and (3) Salinas's fax cleared Paris for work on April 9.

[12] Paris also relies on three pieces of evidence in support of this date:  (1) During a telephone conversation between her and Campbell on April 15, Campbell told her that she had been terminated on April 1; (2) the "Salaried Payroll Authorization" form originally indicated April 1 as the termination date, but Sanderson Farms had altered the form to indicate an effective date of April 9 (According to Paris, the form itself makes this alteration readily apparent.); and (3) a Consolidated Omnibus Reconciliation Act ("COBRA") form provided to Paris after her termination lists "End of employment" as occurring on April 1.  Sanderson Farms disputes these assertions:  (1) Campbell denies having a conversation with Paris on April 15; (2) there is no evidence that the date on the form has been altered; and (3) per Campbell's testimony, the date on the COBRA form merely reflected that Paris's paycheck would be stopped as of March 31 "so she wouldn't be paid as of April the 1st.  But April the 9th was the actual effective date" of termination.

No. 13-20239

to judgment as a matter of law." FED. R. CIV. P. 56(a).

*Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012), *cert. denied*, 2013 U.S. LEXIS 5708 (U.S. Oct. 7, 2013) (No. 12-1437). We consider "all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of motions for summary judgment." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005) (citation omitted).

## A.

FMLA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual" who takes FMLA leave or engages in other protected activity under the Act. 29 U.S.C. § 2615(a)(2) (2012); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). Where, as here, the employee has not offered direct evidence of discrimination, this court applies the familiar three-step burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-03 (1973).[13]

First, the employee must establish a *prima facie* case of discrimination. Second, if he does that, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse action. Finally, if the employer meets its burden, the employee must show that the reason provided was a pretext for discrimination.

Sanderson Farm assumed Paris could establish a *prima facie* case, so we, like the district court, assume that. We next must inquire whether Sanderson

---

[13] *See Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999), *partially abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–49 (2000).

Farms produced evidence demonstrating a legitimate, non-discriminatory reason for terminating Paris.  Sanderson Farms put forward evidence demonstrating it terminated Paris's employment when she failed (1) to return to work following her extended FMLA leave and (2) to submit any certification seeking another extension.  Because failure to return following a FMLA leave constitutes a legitimate, non-discriminatory basis for termination, Sanderson Farms has met its burden under *McDonnell*'s second step.  *See Hart v. Comcast of Hous., LLC*, 347 F. App'x 978, 980 (5th Cir. 2009).

Thus, moving to *McDonnell*'s third step, summary judgment must be affirmed unless Paris can identify evidence that creates a genuine issue of fact that Sanderson Farms' justification was pretextual. That is, Paris needs to have put forward sufficient evidence to show Sanderson Farms terminated her employment because she took FMLA leave.  We agree with the district court: None of the "plethora of arguments" Paris argued before the district court, and repeats before this court, creates a genuine issue of material fact on pretext.

First, Paris attempts to show pretext by demonstrating she requested an extension to her FMLA leave before April 9, 2010.  Paris, however, points only to her testimony regarding messages she left on April 2 and 8.  Even if the record demonstrates Paris left these messages with the receptionist, Paris would not have complied with Sanderson Farms' policy.  Paris does not dispute any of the following four findings:  (1) She received Campbell's March 25 letter; (2) that letter informed her that she needed either to return to work or to submit completed certification forms by April 10; (3) the letter included blank certification forms; and (4) she did not submit completed certification forms to Sanderson Farms, exactly the reason Sanderson Farms justified its termination on.  The

evidence Paris points to does not demonstrate a genuine issue on pretext.

Second, Paris claims Sanderson Farms' failure to contact her between April 9 and April 13 creates a genuine issue on pretext. Paris argues that because she had complied with company policy thus far, Sanderson Farms' failure to clarify the "odd" features of Salinas's faxed certification suggests pretext. Paris also theorizes that Sanderson Farms violated its own company policy by not "ensur[ing] there was no miscommunication," again suggesting "Ormon was waiting for a pretext to terminate her" for taking FMLA leave.

Neither of these arguments creates a genuine issue. Paris, contrary to her assertion, did not comply with "every request of Sanderson Farms." As discussed above, Paris does not dispute (1) she received Campbell's March 25 letter; and (2) that letter described the exact steps she needed to take to remain employed. The record therefore indicates Sanderson Farms clearly informed Paris of what she needed to do to. Even if Salinas's certification was "odd," the Policy still required Paris either to return to work or to submit completed certification by April 10. Paris failed to do so.

In terms of her second argument, Paris has not put forward any evidence showing that the Policy required Sanderson Farms to clarify an employee's failure to comply. Paris points only to Campbell's deposition testimony, in which Campbell was asked about what she *believed a company should do* in certain situations.[14] That testimony does not state what Sanderson Farms required its

---

[14] The relevant deposition testimony is as follows:

[Plaintiff's Counsel]: Do you believe that a company should take care to ensure that it has good reason to terminate an employee?
[Campbell]: Yes.

(continued...)

No. 13-20239

employees to do in this situation. Even if this testimony somehow revealed Sanderson Farms' policy, it does not provide evidence that it violated its policies. At best, the testimony shows Sanderson Farms has a general duty to communicate with its employees while they were on medical leave, which it certainly did here.

Furthermore, even if this testimony shows Sanderson Farms violated its internal policies—which it does not—such evidence does not preclude summary judgment.[15] It is true that such violation of internal policies, depending on, *inter alia*, the nature of the internal policy and the extent of the deviation in the particular case, could give rise to evidence of pretext in light of all the other relevant facts. *See, e.g.*, *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005). Here, however, the undisputed evidence shows Sanderson Farms repeatedly communicated with Paris and told her the specific obligations to remain

---

[14] (...continued)

[Plaintiff's Counsel]: Do you believe that a company should take care to ensure that it has a good reason to terminate an employee?
[Campbell]: Yes.
[Plaintiff's Counsel]: Do you believe that a company should take care to ensure that it has its facts straight before terminating an employee?
[Campbell]: Yes.
[Plaintiff's Counsel]: Do you believe that a company should take care to ensure it's not terminating an employee based on wrong information?
[Campbell]: Yes.
[Plaintiff's Counsel]: Do you believe that a company should take care to ensure it is not terminating an employee based on false information?
[Campbell]: Yes.
. . .
[Plaintiff's Counsel]: And is it also important for a company to communicate with an employee when the employee is out on medical leave?
[Campbell]: Yes.

[15] *See Grubb v. Sw. Airlines*, 296 F. App'x 383, 390 (5th Cir 2008) (per curiam) ("Failure to follow internal procedures is generally not enough to create a genuine issue of fact as to discriminatory motives.").

employed.  Even if the record clearly showed Sanderson Farms' policy required it to have communicated with Paris between April 9 and the time of termination, and Sanderson Farms failed to do so, that evidence does not give rise to a genuine issue on pretext.

Third, Paris attempts to show pretext by arguing she has put forward sufficient evidence showing her effective termination date was April 1.  She relies on three pieces of evidence that Paris believes create a dispute on the termination date:  (1) According to Paris, the Sanderson Farms Salaried Payroll Authorization form "has been altered to change the Effective Date and Term Date from '4/1/10' to '4/9/10'"; (2) the COBRA letter states Paris's medical benefits ended on April 1; and (3) Campbell's allegedly telling Paris that her employment had been terminated effective April 1.  According to Paris, "[a] termination date of April 1, 2010 is incompatible with Sanderson Farms' proffered reason for termination—Paris's alleged failure to return to work on April 12, 2010—and is evidence of a factual issue that should have precluded summary judgment."

As the district court decided, none of these assertions gives rise to a material factual dispute on pretext.  With respect to the allegedly altered date, without pointing to any expert testimony or other objective criteria, Paris merely asserts the form makes it clear that the date has been altered.  She does not explain why or how the document was altered, and she ignores Buster's and Ormon's testimony:  Both stated under oath that they did not, nor did they instruct anyone else to, alter the document.

As to the second contention, the undisputed record explains the discrepancy between the effective termination date (April 9) and the date listed on the COBRA letter (April 1).  Under Sanderson Farms' salary-continuation policy,

No. 13-20239

Paris's pay continued only through March 18 (when her certification from Salinas expired). The date on the COBRA form merely reflected that Paris's paycheck would be stopped as of March 31, because no further pay was due.

Finally, as to her third contention, like the altered date, without any substantiation, Paris merely asserts Campbell called her and told her that April 1 was her effective termination. That "evidence" amounts to nothing more than "conclusory statements, speculation, and unsubstantiated assertions" and, therefore, cannot defeat summary judgment. *See RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851 (5th Cir. 2010).

Fourth, Paris contends Sanderson Farms "changed its story" about who made the termination decision. We agree with the district court that "a proper reading of the record does not demonstrate any meaningful inconsistency" about who at Sanderson Farms decided to terminate Paris's employment.[16] Likewise, the district court properly concluded "the salient question is not who terminated the plaintiff but why she was terminated." As discussed above, the undisputed record indicates Sanderson Farms terminated Paris because she failed either to return to work or to submit an updated certification form. This contention does not create a genuine issue on pretext.

Lastly, Paris contends "Ormon has a negative attitude toward FMLA leave and Sanderson Farms has a pattern and practice of terminating employees for taking FMLA leave." To substantiate her claim that pretext can be shown by Ormon's negative attitude, instead of offering her own "conclusory statements, speculation, and unsubstantiated assertions," Paris now offers statements by

[16] Each of Sanderson Farms' witnesses, as well as its interrogatory response, identified Buster as the decision-maker, with some degree of input from Campbell and Ormon.

No. 13-20239

Carroll. The district court in Carroll's case in fact noted that much of her evidence contained "unsupported conclusory assertions [and] speculation." *Carroll v. Sanderson Farms, Inc.*, No. H-10-3108, 2012 WL 3866886, at *14-15 (S.D. Tex. Sept. 5, 2012).

In terms of her second contention, Paris has likewise not put forward sufficient evidence of a pattern and practice of retaliation. First, she does not dispute that Sanderson Farms' FMLA leave policy provides more generous benefits than required by state and federal law—a fact inconsistent with a pattern and practice of FMLA discrimination.

The facts of this case, furthermore, do not suggest a pattern or practice of terminating employees for taking FMLA leave. As the district court noted, Paris was granted discretionary leave and continued receiving pay long after her statutory and company leave had expired. We again agree with the district court that Paris has not offered any competent evidence giving rise to a genuine issue on pretext.

## B.

FMLA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual because such individual . . . has testified, or is about to testify, in *any inquiry or proceeding* relating to any right provided under this subchapter." 29 U.S.C. § 2615(b)(3) (2012) (emphasis added). Paris asserted she had been terminated in retaliation for having been identified as a witness in Carroll's lawsuit.[17] Finding that Paris "failed to establish any nexus

---

[17] Before the district court, Sanderson Farms argued that the FMLA precluded liability under this theory: "[S]erving as a witness to an allegedly hostile comment toward another employee several months earlier is not among the 'rights' enumerated under the FMLA or for which retaliation is prohibited, and the letter does not provide a valid basis for an FMLA retal-

(continued...)

between her potential role as a witness in Carroll's case and [her] termination," the district court concluded that Paris "has not established a *prima facie* case regarding her 'witness retaliation claim.'" Even assuming *arguendo* that Paris could establish a *prima facie* case, the district court would nevertheless grant summary judgment, because Sanderson Farms "articulated a legitimate, non-discriminatory reason for terminating [Paris]," and Paris failed to produce evidence showing that the stated reason was pretextual.

On appeal, Paris argues the district court erred in two ways:  (1) Sanderson Farms did not move for summary judgment on her witness-retaliation claim, and, therefore, the district court could not grant summary judgment on that claim; and (2) Paris presented sufficient evidence to deny summary judgment.

We reject both of these claims.  Rule 56 places the initial responsibility on Sanderson Farms, as the "party seeking summary judgment[,] . . . to inform[] the district court of the basis for its motion, and identif[y] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see* FED. R. CIV. P. 56(c).

Sanderson Farms has met its burden under Rule 56.  It moved for summary judgment on all of Paris's claims, including witness retaliation.[18]  Further

---

[17] (...continued)

iation claim."  Because the plain text of § 2615(b)(3) appears to allow such a theory, however, we do not affirm summary judgment on this ground.

[18] In its motion for summary judgment, Sanderson Farms argued,

> Plaintiff claims that Richard Warner retaliated against her for taking her first FMLA leave . . . and that her discharge following her second period of FMLA leave was motivated by an alleged disability and/or retaliation for taking medi-
>
> (continued...)

No. 13-20239

more, Sanderson Farms' arguments—concerning both its non-discriminatory basis and the lack of pretext—apply with just as much force to Paris's witness-retaliation claim. Paris puts forward no precedent suggesting this degree of identification is insufficient under Rule 56.[19]

As to her second basis of error, Paris does not point to any additional evidence that was not discussed above. We again find she has not presented evidence giving rise to a genuine issue on pretext.

C.

FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny-[ing] the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1) (2012). The district court granted summary judgment on Paris's FMLA interference claim. Paris has not appealed this issue, so it is waived. *See State v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000).

---

[18] (...continued)

cal leave, in alleged violation of the ADA, TCHRA and/or FMLA. . . . In this case, Sanderson Farms has articulated a legitimate, non-discriminatory reason for its actions, and there is no competent evidence of pretext. Accordingly, summary judgment should be entered for Sanderson Farms.

Sanderson Farms added, in a footnote, that Paris

also believes she may have been retaliated against for 'being named as a witness' in a demand letter submitted to Sanderson Farms by former Field Employee Relations Manager Revena Carroll . . . . Jennifer Buster looked into the concerns raised in Carroll's letter, but there is no evidence to establish that the letter played any role in Plaintiff's termination several months later.

[19] Paris only cites to *Russ v. Int'l Paper Co.*, 943 F.2d 589 (5th Cir. 1991). In that case, the defendant moved for summary judgment, identifying "two issues it contended were established in the record, either of which would be considered dispositive under Mississippi law . . . ." *Id.* at 592. This court affirmed, finding that the defendant had met its burden under Rule 56. *Id.* Nothing in *Russ* suggests that Sanderson Farms has not met its burden here.

No. 13-20239

## D.

Lastly, Paris alleges two errors with the grant of summary judgment on her claims under the ADA and TCHRA.  First, she avers that because Sanderson Farms did not move for summary judgment on the claims, the district court could not grant summary judgment on them.  Contrary to Paris's claim, however, as discussed above, Sanderson Farms moved for summary judgment on all of Paris's claims, specifically those under the FMLA, ADA, and TCHRA.[20]  Sanderson Farms has met its Rule 56 obligations.

Second, without presenting any additional justifications, Paris again argues "summary judgment should still have been denied because Paris presented evidence of pretext."  We again conclude that Paris has not presented evidence giving rise to a material factual dispute on pretext.

The judgment is AFFIRMED.

---

[20] In its motion for summary judgment, Sanderson Farms argued as follows:

Plaintiff claims that Richard Warner retaliated against her for taking her first FMLA leave . . . and that her discharge following her second period of FMLA leave was motivated by an alleged disability and/or retaliation for taking medical leave, *in alleged violation of the ADA, TCHRA and/or FMLA. . . .*  In this case, Sanderson Farms has articulated a legitimate, non-discriminatory reason for its actions, and there is no competent evidence of pretext.  Accordingly, summary judgment should be entered for Sanderson Farms.