# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41455
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
August 1, 2016

Lyle W. Cayce
Clerk

TAYLOR WHITE,

      Plaintiff - Appellant

v.

DENTON COUNTY,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CV-13

Before STEWART, Chief Judge, and SMITH and COSTA, Circuit Judges.

PER CURIAM:*

     Plaintiff-Appellant Taylor White ("White") brought this suit against his employer Defendant-Appellee Denton County (the "County") for, *inter alia*, unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and retaliation in violation of 29 U.S.C. § 215(a).  The district court granted summary judgment in favor of the County due to White's

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-41455

failure to (1) provide the amount of overtime compensation due and (2) establish a fact issue showing that the County's actions would not have occurred "but for" White's protected activity under the FLSA. White appeals the district court's grant of summary judgment as to his retaliation claim. For the reasons set forth below, we AFFIRM.

I.

The relevant facts in this case are not in dispute. Between December 2006 and April 2013, White served as a Detention Officer with the sheriff's office in Denton County, Texas. In August 2012, White contacted County Treasurer, Cindy Brown, to notify her of his concerns that the County was neither properly nor timely paying him at time-and-a-half over his regular pay for overtime hours worked during multiple fourteen-day work periods. He filed suit five months later in January of 2013 against the County for its alleged violation of the FLSA.

On April 5, 2013, White was involved in an excessive force incident while on duty at the county jail. Approximately twenty to thirty minutes before "lights out," and after entering the barracks where inmates were housed in the jail to conduct a time check, White approached inmate Phillip Harrison SO # 59300 ("Harrison") from behind. Harrison, who did not see White or appear to know that White was approaching him, was seated on two stacked milk crates in the middle of the room. White planted his right foot just behind the milk crates, brought his left leg into a swinging position, and kicked the crates from underneath Harrison. He extended his hands and quickly placed them behind Harrison easing Harrison's fall to the ground. While several others around Harrison laughed at his fall, Harrison cried out. White walked away smiling and Harrison remained on the floor for eight minutes. Shortly after returning to a seated position on the crates, Harrison walked toward White with a heavy

2

limp and told an officer seated next to White that he has "decided to let [White] keep his job." Although Harrison did not request medical attention of his own volition—he walked away from his conversation with White, laughing, and with no limp at all—Joseph Connolly, the Lieutenant for Professional Standards in the Denton County Sheriff's Office, recommended that Harrison undergo a medical evaluation.

The Denton County Sheriff's Office maintains a Professional Standards Unit which, under the direction of Sheriff William Travis, addresses both background investigations of prospective employees and Internal Affairs Investigations of current employees. Assistant Chief Deputy Roy Davenport, who was the Assistant Chief in Charge of the jail at the time of the April incident, notified Chief Deputy Rex George of White's physical altercation with Harrison. Chief Deputy George notified Sheriff Travis. Chief Deputy George serves as the designee for Sheriff Travis, reviewing and determining what disciplinary action should be taken with regard to an officer's violation of department rules. Both Sheriff Travis and Chief Deputy George reviewed the video of the altercation between White and Harrison and agreed that the matter would go forward for investigation with Internal Affairs by Lieutenant Connolly. At the time, Chief Deputy George was aware that White was involved in the underlying lawsuit against the County. Sheriff Travis testified that when he originally viewed the video of the April incident and concluded that termination was warranted, he did not know that White had sued the County. On April 12, 2013, White was placed on administrative leave pending the completion of the investigation.

Lieutenant Connolly conducted an internal investigation into White's conduct. As part of his employment, White was responsible for performing specialized law enforcement work in the care and security of inmates to ensure

their constitutional rights and welfare are safeguarded in the county jail. However, in a post-investigation memorandum, Lieutenant Connolly described White's behavior as "outside the scope of his responsibilities," "irresponsible," "immature," having "the potential to create liability," "set[ting] a poor example," and "possibly constitut[ing] criminal conduct and/or a violation of the inmate's constitutional rights." Lieutenant Connolly was aware that White filed a lawsuit against the County at the time of the investigation.

Although Lieutenant Connolly did not recommend any particular disciplinary action at that time, he described White's conduct as "an offense serious enough to warrant termination." The Sheriff's Office Civil Service Commission is the body that has final authority regarding the conclusion of the investigation and determines what disciplinary action, if any, is warranted. Following the Internal Affairs investigation, Chief Deputy George recommended to Sheriff Travis that White be terminated. Sheriff Travis agreed, and Chief Deputy George terminated White on April 23, 2013.

## II.

On or about January 10, 2013, White sued the County alleging, *inter alia*, three violations of the FLSA for (1) forced payment of compensatory time in lieu of straight time, (2) forced compensatory time in lieu of overtime pay, and (3) failure to timely pay both straight time and overtime pay. After his termination, White filed a Second Amended Complaint, asserting that the County retaliated against him in violation of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a). White also sought declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and class certification of similarly situated employees. On March 28, 2014, the district court dismissed White's claims for forced compensatory time in lieu of straight time and for failure to pay straight time and his request for declaratory judgment. The County moved

for summary judgment on White's remaining claims, which the district court granted.  White timely appealed the grant of summary judgment only as to his retaliation claim.

## III.

We review the district court's grant of summary judgment *de novo*, applying the same legal standards that the district court applied.  *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 433–34 (5th Cir. 2005).  Summary judgment is proper if the evidence shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  We view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *See Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  "Even if we do not agree with the reasons given by the district court to support summary judgment, we may affirm the district court's ruling on any grounds supported by the record."  *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011) (quoting *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005)).

## IV.

The primary issue on appeal is whether the trial court correctly granted the County's Motion for Summary Judgment as to White's FLSA retaliation claim.  The FLSA provides, in pertinent part, that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).  White's claim is that the County retaliated against him in

violation of the FLSA's anti-retaliation provisions for filing his January 2013 lawsuit. "An employee asserting retaliation under the FLSA may proceed in one of two ways: by direct or circumstantial evidence." *Monroe Firefighters Ass'n v. City of Monroe*, No. CIV.A. 06-CV-1092, 2009 WL 772829, at *3 (W.D. La. Mar. 17, 2009). If a plaintiff does not have direct evidence of retaliation, then his claim is subject to the traditional burden-shifting framework of *McDonnell Douglas Corp. v. Green. See Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 577 (5th Cir. 2004) (noting retaliation claims under the FLSA are subject to the Title VII *McDonnell Douglas* burden-shifting analysis). As no direct evidence of retaliation has been presented in this case, we proceed in light of *McDonnell Douglas*.

To establish a *prima facie* claim of retaliation under the *McDonnell Douglas* burden-shifting framework, a plaintiff must demonstrate (1) participation in a protected activity; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. *See Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008). If a plaintiff meets this initial burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decision. *Id.* The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination. *Id.*

Neither White nor the County disputes that White engaged in a statutorily protected activity or that he suffered an adverse employment action. Three months prior to his termination, White lodged a personal complaint about the wage and hour practices of his employer and asserted a right adverse to the County; he was fired soon thereafter. With respect to the third prong, White argues that because his termination occurred "a mere three months" after the underlying lawsuit was filed, he has established a causal

connection between both events.  White also attempts to bolster his argument that because decision-making County officials had knowledge of his lawsuit, he has established a causal link.

Assuming without deciding that the evidence presented is sufficient to establish a *prima facie* case, the County has satisfied its burden of establishing a legitimate, non-retaliatory reason for firing White: White's excessive use of force against an inmate in violation of the County's policy.  According to the record, White was terminated for "intentionally and recklessly" kicking two stacked milk crates, causing an inmate to fall to the floor in a supine position, in violation of various provisions of the Denton County Sheriff's Office Code of Conduct.  In support of its finding that White should be terminated, the County presented evidence including a video depicting physical action taken against the inmate and the affidavits of Lieutenant Connolly, Sheriff Travis, and others.  The unprofessional use of force by White, even if in jest, presents sufficient justification for the County's decision to terminate White, as he was in violation of the County's clear and undisputed policies.  *See McCoy*, 492 F.3d at 561–62 (concluding that the city's proffered nondiscriminatory reason for retrieving a police lieutenant's badge and gun and placing the lieutenant on leave stemmed from unwanted workplace conduct and the need to comply with rules administered by the city).

Assuming a *prima facie* case, and in light of the County's legitimate, non-retaliatory reason for White's termination, White must present evidence, direct or circumstantial, that the County's reason was pretext.  "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment

action." *Id*. In determining whether pretext is present, we note that the issue here is not whether the County made an erroneous decision, but whether that decision was made with a retaliatory motive. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).

Relying on *Pittman v. Collins*, White cites the following to establish pretext: (1) knowledge of White's lawsuit by those making the decision to terminate him; (2) the County's failure to adhere to established Sheriff's Office policies; (3) the County's discriminatory treatment of White in comparison to similarly situated employees; (4) evidence that the County's stated reason for discharge was false; and (5) Sheriff Travis's expression of a negative attitude toward employees who sue the County. *See* No. 4:08-CV-257, 2010 WL 1330752, at *5 (E.D. Tex. Mar. 30, 2010).

First, White's attempt to prove pretext by showing that County decision-makers knew of his lawsuit and took an adverse employment action shortly thereafter fails. While close timing may be sufficient to make out a *prima facie* case, "once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.1997)); *see also id.* (concluding that knowledge of a protected activity, without evidence from which a reasonable juror could infer that defendant's proffered reasons were pretextual, such as evidence of past discriminatory conduct toward plaintiff, is insufficient to survive summary judgment). At the time of Sheriff Travis's recommendation that White be terminated, he was unaware that White had a suit pending against the County. White has failed to traverse this testimony. Furthermore, Lieutenant Connolly testified that, in conducting his

8

investigation, knowledge of White's lawsuit in an unrelated matter did not impact his investigation nor did Lieutenant Connolly receive pressure, either formally or informally, to sustain an allegation against White.

White's second claim—that the County failed to adhere to established policy—fails to pass muster. White cites no internal policy that was violated in carrying out his termination, nor is White's claim that his conduct was trivial sufficient to show pretext, as he was in clear violation of County policy. *See Pittman*, 2010 WL 1330752, at \*5 ("[T]he undisputed evidence indicates Plaintiff was terminated for failure to comply with the County's uniform policy."); *see also Paris v. Sanderson Farms, Inc.*, 542 F. App'x 370, 375 (5th Cir. 2013).

Third, White points to alleged examples of disparate treatment to show pretext. He contends that numerous other detention officers violated County policies but were not terminated. "[A]n employee who proffers a fellow employee as a comparator in an employment discrimination case [must] demonstrate that the employment actions at issue were taken under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citation and internal quotation marks omitted). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* While White has proffered evidence of several other incidents between detention officers and inmates, none involved the same supervisor nor was the employment decision made by the same person. Thus, in order to show pretext, White must present evidence of an employee who engaged in similar

conduct, shared the same job or responsibilities as White and who had comparable violation history.

He has failed to do so.  Specifically, White points to a 2009 incident involving a verbal altercation with an inmate and a 2011 incident that involved mistreatment of and denying privileges to inmates.  However, Sheriff Travis was not in charge at the time.  Even if White could point to these instances, they are not sufficient.  In both scenarios the officers received suspension without pay for two to three days for their "unbecoming conduct."  But neither of these incidents involved an officer instigating an unprovoked physical altercation.  And indeed, the most similar incident to White's conduct occurred in 2011 and involved a former detention officer who was terminated after entering an inmate's cell, grabbing the inmate by the throat, and choking him.  Although White attempts to distinguish his conduct from that of another terminated officer, we conclude that this 2011 incident is most similar to White's conduct, as both detention officer's conduct involved unprovoked physical force.  Just as termination was warranted there, White's physical force, however mild or in jest, warranted termination under the County's rules.

White also stated that his conduct occurred under nearly identical circumstances to a fourth incident involving an officer who lifted and slammed an arrestee on the ground while searching him in a holding area; that officer was not terminated.  Although both scenarios involved physical force, we agree with the district court that unlike the instant case, the cited altercation involved a heightened security scenario and a potential for a struggle which warranted some use of physical conduct.  Accordingly, White has failed to demonstrate that he was treated differently from similarly situated employees under nearly identical circumstances.

Next, although White argues the falsity of the County's non-retaliatory reasons, he has presented no evidence of inconsistencies or shifting explanations for his firing. *See Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 594 (5th Cir. 2007). In fact, the thorough investigation conducted by Lieutenant Connolly—which included multiple interviews and the review of video surveillance—along with the objective nature of the lieutenant's investigation greatly reduces the likelihood that the County's legitimate reason for terminating White is a pretext for an unlawful purpose. *See Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 274–76 (5th Cir. 2006). "Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

Finally, White argues that Sheriff Travis possessed discriminatory animus generally towards those who have filed suit against the County and that this animus influenced the decision to terminate White. In an October 2012 letter to a former Denton County officer who sued the County following his firing, Sheriff Travis stated that the officer should, instead of suing, "have enough self respect [sic] to go find another job and show that person, you never slowed me down!" Sheriff Travis then went on to inform the former officer that he would need to drop his lawsuit if he ever again intended to work for the Denton County Sheriff's Office. While Sheriff Travis did express a negative attitude toward another detention officer's filing of a lawsuit against the County, White fails to point to any evidence that Sheriff Travis directed any animus toward White specifically. *See, e.g., Bergen v. Cont'l Cas. Co.*, 368 F. Supp. 2d 567, 582 (N.D. Tex. 2005) (finding that a general negative attitude, by itself, is insufficient to raise a genuine issue of material fact of a retaliatory motive in defendant's decision to terminate plaintiff because "[t]he context and

content of [defendant's] remark [wa]s devoid of any expression of a negative attitude toward [plaintiff]".).    Although Sheriff Travis's statement may indicate a general negative attitude, by itself, it is insufficient to raise a genuine issue of material fact of a retaliatory motive in the County's decision to terminate White.  *Id.*  Since we have considered the remainder of White's evidentiary proffer and found it insufficient, White has failed to produce substantial evidence of pretext outside of Sheriff Travis's letter.  *See, e.g.*, *Ray v. United Parcel Serv.*, 587 F. App'x 182, 195–96 (5th Cir. 2014).

After reviewing the record, we conclude that White has failed to establish a genuine issue of material fact regarding pretext.  There is no dispute that White engaged in excessive force in violation of County policy.  Thus, White's belief that the County's "decision was motivated by discrimination, however genuinely held, is not sufficient evidence of pretext."  *Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir. 2005); *see also Ross v. Univ. of Tex. at San Antonio*, 139 F.3d 521, 526–27 (5th Cir. 1998) (holding that the plaintiff's generalized statements about relative qualifications or treatment of similarly situated employees is insufficient to defeat summary judgment).  Because White has failed to create a fact issue as to pretext, he has not shown that he would not have been terminated but for his lawsuit.

V.

For the foregoing reasons, we AFFIRM.

12